(text box: 1) NO. 5-04-0542

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

WALKER ALLEN, )  Petition for Review of the Order of the

)  Chief Legal Counsel Designee of the

     Petitioner, )  Illinois Department of Human Rights. 

)

v. )

)

MICHAEL I. LIEBERMAN, THE )  No. 2003SA3596

DEPARTMENT OF HUMAN RIGHTS, and )

SOUTHERN ILLINOIS UNIVERSITY, )

)  

     Respondents. )

________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

Walker Allen, the petitioner, appeals from a decision of the chief legal counsel designee of the Illinois Department of Human Rights (Department), Michael I. Lieberman, sustaining the Department's dismissal of the petitioner's charges of discrimination based on age, sex, and disability against his former employer, Southern Illinois University, for a lack of jurisdiction.  On this direct appeal to this court, pursuant to section 8-111(A)(1) of the Illinois Human Rights Act (775 ILCS 5/8-111(A)(1) (West 2004)) and Supreme Court Rule 335 (155 Ill. 2d R. 335), the petitioner alleges that the Department and Lieberman acted arbitrarily and capriciously.  For the following reasons, we affirm in part and reverse in part.   I. BACKGROUND

The petitioner was employed as the director of admissions and records at Southern Illinois University in Carbondale (University) from 1997 to December 31, 2002.  In June of 2001, he applied for the newly created position of assistant vice-chancellor for student affairs.  He was not offered the position.  A few months later, Dr. Larry Dietz informed the petitioner in a letter dated December 12, 2001, that the University was not renewing his continuous appointment as the director of admissions and records, to accommodate the reorganization of the enrollment-management unit, and that his continuous appointment would change to a 12-month term appointment which would end at 5 p.m. on December 31, 2002.  The petitioner sent a memorandum to Dietz on December 2, 2002.  In the memo, the petitioner acknowledged that his term contract was set to expire at the end of the month, and he expressed his desire to continue working at the University.  He inquired about whether the University intended to renew his contract, and he requested a written response.  Dietz informed the petitioner in writing on December 12, 2002, that his term appointment would not be renewed.  Additionally, Dietz offered to continue to assist the petitioner in his job search and to host a reception for him as he had done for other departing directors.  The petitioner's employment with the University ended on December 31, 2002. 

On April 4, 2002, approximately four months after he had been first informed that his appointment had been changed from continuous to term, the petitioner filed a charge of discrimination (No. 280A200931) with the Equal Employment Opportunity Commission (EEOC).  He alleged that he had applied for a position for which he was qualified but was not selected for an interview, in violation of the University's policy.  He alleged that the University had hired a younger, less-qualified, and nondisabled woman for the position and that it had given him a one-year term contract because of his age, sex, and disability.  He was 64 years old at the time, and his right arm and hand were paralyzed and impaired.    

The charge form the petitioner filed with the EEOC contains areas with questions to answer and boxes to check.  In the area entitled "cause of discrimination", the petitioner checked boxes next to "sex", "age", and "disability".  In the area entitled "date discrimination took place", the petitioner stated "October 10, 2001" and checked the box indicating that it was a continuing action.  (The record is not clear regarding what facts or events are associated with the date of October 10, 2001.)  At the bottom of the form, above his signature and the date, the petitioner checked a box preceding the following statement:

"I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number[,] and I will cooperate fully with them in the processing of my charge in accordance with their procedures."  

The petitioner had the form notarized and filed it with the EEOC on April 18, 2002.  

The EEOC transmitted this charge to the Department on April 25, 2002, along with a fully addressed transmittal form addressed to the Department in Springfield, Illinois.  Like the charge itself, the form contains a number of boxes to check indicating a variety of investigatory options for the EEOC and the Department.  For reasons not explained in the record, none of these boxes was checked on the transmittal form, and aside from the petitioner's request we do not know why the EEOC sent the form or the charge to the Department.  The EEOC dismissed this charge in February of 2003; however, the record is silent regarding the basis underlying the dismissal.  

About one year after he filed his charge with the EEOC and two months after the EEOC dismissed it, the petitioner's counsel's paralegal contacted the Department to inquire about the status of the transmitted charge.  He learned for the first time that the Department had not assigned the charge a docket number because it had not been filed directly with the Department.  When asked to identify the Department regulation or other legal authority creating a direct-filing requirement, he was told that there was no such regulation or authority.  

Based on this information from the Department, the petitioner filed a charge directly with the Department on June 5, 2003, and again checked the box indicating that he wanted the charge filed with both the EEOC and the state or local agency.  In this second charge, he stated that he had previously filed a charge in April of 2002 with the EEOC, and he incorporated the allegations in his first charge into the second charge.  The petitioner continued to allege discrimination based on age, sex, and disability, but he changed the date of discrimination to December 12, 2002, 
i.e.
, the date of Dietz's second letter informing him that the University would not offer him an additional contract.  This time, he did not check the box on the charge form indicating that the alleged action was continuing.  The Department assigned No. 2003SA3596 to the second charge and filed it with the EEOC, which assigned its own number. 

On December 15, 2003, the petitioner's counsel's paralegal spoke to Tonya Malin, the Department's investigator assigned to the second charge.  Malin informed him that the Department was investigating the jurisdictional basis for the second charge and that it appeared that it might have been filed out of time.  The paralegal informed Malin about the first charge and told her that the Department had not assigned a number to it.  He explained to her that the petitioner had filed the second charge directly with the Department only after becoming aware that the Department had no intention of processing the first charge.  He asked her to assign a charge number to the first charge and to compute the limitation period set forth in section 7A-102(A)(1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(A)(1) (West 2004)) with regard to the date the first charge had been filed.   

The Department dismissed the second charge for a lack of jurisdiction on February 18, 2004, based on a report authored by Malin.  The report reflects that the alleged violation  occurred on December 12, 2002 (the date of Dietz's second letter confirming that no further contract would be offered), but this date was "corrected" to December 18, 2001 (the date the petitioner received the change-of-assignment form).  (For clarity, the corrected date should have been December 12, 2001, the date of Dietz's initial letter informing the petitioner for the first time that his continuous appointment would not be renewed and offering a 12-month term appointment set to end on December 31, 2002.  However, Dietz's letter was not a part of the investigator's file.  This detail does not affect the parties' arguments, this court's jurisdiction, or our disposition of the appeal.)  Malin observed in her report that on December 2, 2002, the petitioner had requested a reconsideration of his contract and that Dietz affirmed the University's earlier decision the following week.  Malin characterized Dietz's response to the petitioner's request as a reaffirmation of the University's earlier decision and not a new harm.  She further noted that the petitioner had incorporated his first charge into his second charge, but she stated, "[B]ecause the allegations in the EEOC charge were not [
sic
] being filed 604 days after the alleged harm and the fact that another administrative agency was already addressing those allegations, the Department did not process these allegations."    

On March 19, 2004, the petitioner filed a request for a review of the Department's dismissal.  The petitioner noted in the caption of his request that he sought the review of charge Nos. 280A200931 and 2003SA3596.  Therein, the petitioner discussed work-sharing agreements between the EEOC and the Department governing discrimination proceedings under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e 
et seq.
 (2000)).  The petitioner argued that pursuant to the agreements, the Department was obligated to docket and investigate his first charge upon receipt of it from the EEOC and that it would have been timely filed had the Department docketed it.  He asked that the first charge be retroactively assigned a Department charge number and processed in accordance with state law.  Additionally, the petitioner claimed that his second charge was timely and should be reinstated because it had been filed within 180 days of the date he definitively learned that he would be terminated, 
i.e.
, the date of Dietz's second letter dated December 12, 2002.  The petitioner's request for review was supported by exhibits, including his first and second charges, the EEOC's transmittal form regarding the first charge, affidavits from the petitioner, his counsel, and his counsel's paralegal, Dietz's December 12, 2001, and December 12, 2002, letters, and blank copies of charge forms provided to the petitioner by the Department.  (The charge forms provided by the Department are nearly identical to the petitioner's first charge filed with the EEOC.)  

On July 28, 2003, Lieberman entered a final order sustaining the Department's dismissal of the petitioner's charge for a lack of jurisdiction.  The caption of the order noted only the number for the second charge–No. 2003SA3596.  The order contains findings of fact consisting of 10 numbered paragraphs.  Lieberman found that the limitation period for filing a charge with the Department began on December 18, 2001, when the petitioner received the notice that his position was changing from a continuous appointment to a term appointment which would end on December 31, 2002.  He reasoned that Dietz's second letter dated December 12, 2002, "was merely a refusal by Respondent to change its previous decision and was not a new act of discrimination."  Lieberman concluded that the Department did not have jurisdiction to investigate the petitioner's second charge because the petitioner had filed it on June 5, 2003, more than 180 days after his receipt of the December 18, 2001, notice.  Lieberman addressed the petitioner's first charge in the order.  He stated as follows:

"In his Request, Complainant does not provide any evidence showing the Department has jurisdiction in this matter.  In his Request, Complainant argues that his charge was timely filed because on April 18, 2002, he filed Charge No. 280A200931 with the Equal Employment Opportunity Commission ('EEOC').  Complainant further argues that EEOC Charge No. 280A200931 should have been cross-filed with the Department.  However, the Department's investigation did not reveal, and Complainant did not provide, any evidence that the Department received EEOC Charge No. 280A200931.  Even if the Department had received EEOC Charge No. 280A200931, it would not support a finding of jurisdiction as to this instant and independent charge.  To his Request, Complainant attached a copy of EEOC Charge No. 280A200931 and a copy of Dietz's letter to Complainant, dated December 12, 2002.  The Department previously considered these documents and found no evidence that it had jurisdiction to investigate Complainant's charge.  Complainant also attached to his Request a copy of a transmittal form for EEOC Charge No. 280A200931, dated April 25, 2002; a letter from Dietz to Complainant, dated December 12, 2001; and copies of affidavits from Jerry Rappold (a paralegal for Weinhaus, Dobson, Goldberg and Moreland), Jerome J. Dobson (Complainant's attorney), and Complainant.  Complainant has not shown good cause why he failed to submit these documents previously[,] and[] accordingly, this information cannot be considered at this time.  
Roedl v. Midco International
, 296 Ill. App. 3d 213, 694 N.E.2d 179, 183 (5th Dist. 1998).  Complainant's Request is not persuasive."

The petitioner appeals this order pursuant to section 8-111(A)(1) of the Illinois Human Rights Act (Act) (775 ILCS 5/8-111(A)(1) (West 2004)) and Supreme Court Rule 335 (155 Ill. 2d R. 335).  Our review is limited to Lieberman's decision, not the decision of the Department.  We will not disturb Lieberman's decision unless it was arbitrary, capricious, or an abuse of discretion.  
Deen v. Lustig
, 337 Ill. App. 3d 294, 302, 785 N.E.2d 521, 529 (2003); 
Gusciara v. Lustig
, 346 Ill. App. 3d 1012, 1017, 806 N.E.2d 746, 750 (2004).  Agency action is arbitrary and capricious when the agency contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an implausible explanation contrary to agency expertise.  
La Salle National Bank v. City Suites, Inc.
, 325 Ill. App. 3d 780, 786, 758 N.E.2d 382, 387 (2001).  For the following reasons, we affirm Lieberman's decision to sustain the Department's dismissal of the second charge for a lack of jurisdiction.  However, we find that we have jurisdiction to consider the petitioner's claims regarding his first charge, and we reverse Lieberman's findings and order related thereto.   

II.  ANALYSIS

Charge No. 2003SA3596

We first consider the petitioner's arguments related to his second charge, and we affirm Lieberman's order sustaining the Department's dismissal thereof for a lack of jurisdiction.  Section 7A-102(A)(1) of the Act provides that a charge of discrimination must be filed in writing and under oath with the Department within 180 days after the date on which the civil rights violation is allegedly committed.  775 ILCS 5/7A-102(A)(1) (West 2004).  The petitioner's compliance with the 180-day filing requirement of section 7A-102(A)(1) is a condition precedent to his right to seek a remedy and is required to vest the Human Rights Commission with subject matter jurisdiction of the charge.
  Weatherly v. Human Rights Comm'n
, 338 Ill. App. 3d 433, 437, 788 N.E.2d 1175, 1178-79 (2003); 
Pickering v. Human Rights Comm'n
, 146 Ill. App. 3d 340, 346-47, 496 N.E.2d 746, 751 (1986).  The parties do not dispute that the 180-day filing period applies or that it is jurisdictional.  Therefore, we need only decide the date of the alleged discriminatory conduct to determine the effect on the Department's jurisdiction. 

The petitioner contends that the timeliness of his second charge, filed on June 5, 2003, should be evaluated from the date of Dietz's second letter dated December 12, 2002, informing him that the University would not renew his appointment beyond December 31, 2002.  The respondents, however, claim that the date on which the 180-day limitation period began to run was December 18, 2001, when the petitioner was notified of his term appointment.  We agree with the respondents because their argument is supported by precedent, and we find that the petitioner's filing of charge No. 2003SA3596 beyond 180 days following the date he was notified of a change in his appointment status deprives the Department of jurisdiction to consider the charge.  

Courts and the Illinois Human Rights Commission (Commission) dealing with analogous facts have held that the discriminatory conduct occurs upon a complainant's receipt of notification of the term appointment, and not when the complainant's request for reconsideration is denied or when the complainant's employment ends.  
Delaware State College v. Ricks
, 449 U.S. 250, 257-61, 66 L. Ed. 2d 431, 439-42, 101 S. Ct. 498, 503-06 (1980);
 Board of Governors of State Colleges & Universities for Northeastern Illinois University v. Rothbardt
, 98 Ill. App. 3d 423, 429, 424 N.E.2d 742, 747 (1981);
 In re Berg
, Ill. Hum. Rts. Comm'n Rep. 1987SF0304, slip op. at ___ (June 20, 1997).    

In arriving at this conclusion, the 
Ricks
 Court and the Commission in 
In re Berg
 discussed the nature of the term appointment in the university setting and observed that faculty and staff denied tenure or continuous employment are not immediately discharged but are offered a terminal contract or term appointment to continue employment for an additional year.  Upon the expiration of the term appointment, it is understood that the employment relationship ends.  
Delaware State College v. Ricks
, 449 U.S. 250, 253, 66 L. Ed. 2d 431, 436, 101 S. Ct. 498, 501 (1980); 
In re Berg
, slip op. at ___.  For the purpose of calculating the timeliness of this type of claim, courts focus on the time the discriminatory decision is made and communicated to the complainant, not on the time the consequences of the decision are felt.  
Delaware State College v. Ricks
, 449 U.S. 250, 258, 66 L. Ed. 2d 431, 440, 101 S. Ct. 498, 504 (1980); 
In re Berg
, slip op. at ___.

In his second charge, the petitioner alleged that around December 15, 2002, Dietz informed him that the University would not offer him an additional contract and that his employment would end on December 31, 2002.  Applying the reasoning discussed above to these facts, we find that neither December 15 nor December 31 is the date on which the alleged discriminatory conduct occurred.  Rather, the unlawful employment practice, if any, was the University's failure to interview the petitioner for the assistant vice-chancellor position, the University's hiring of a younger, less-qualified, and nondisabled woman for the position, and the University's decision to give the petitioner a term appointment set to expire on a date certain.  The limitations period for these claims, which were alleged in his first charge and incorporated into his second charge, commenced to run on December 18, 2001, when Dietz notified the petitioner of a change in his appointment status from continuous to term.  This is so because the alleged discrimination occurred when the University made the unlawful employment decision and because the "mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."  
In re Berg
, slip op. at ___; 
Delaware State College v. Ricks
, 449 U.S. 250, 257, 66 L. Ed. 2d 431, 439, 101 S. Ct. 498, 504 (1980).  

In his order, Lieberman found that the petitioner knew on December 18, 2001, that the University intended to terminate his contract effective December 31, 2002.  He reasoned that Dietz's letter dated December 12, 2002, represented the University's refusal to change its previous decision and was not a new act of discrimination.  Lieberman concluded that the Department did not have jurisdiction to investigate the petitioner's second charge because it was filed on June 5, 2003, more than 180 days after the petitioner's receipt of the December 18, 2001, notice.  We find no error in Lieberman's disposition of the second charge, and we affirm his order sustaining the Department's dismissal for a lack of jurisdiction. 

We summarily reject the petitioner's claim that the dismissal of his second charge was arbitrary and capricious because he was denied a full investigation required by section 7A-102(C)(1) of the Act and because the Department failed to obtain witness statements or hold a fact-finding conference required by sections 7A-102(C)(3) and (C)(4) of the Act (775 ILCS 5/7A-102(C)(1), (C)(3), (C)(4) (West 2004)).  We agree with the respondents that these sections do not apply to charges that the Department has no jurisdiction to consider.  Support for this conclusion can be found in section 7A-102(C)(4), which provides in part that the Department shall conduct a fact-finding conference unless the charge has been dismissed for a lack of jurisdiction.  Furthermore, we find that it would be contrary to principles of judicial economy to require an administrative body to conduct a full investigation of the merits of a charge if the threshold jurisdictional requirements have not been satisfied.  

Charge No. 280A200931

Before we address on the merits the petitioner's arguments involving his first charge, we must resolve the parties' disagreement regarding this court's jurisdiction.  The petitioner contends that the Department should have docketed the first charge he filed with the EEOC and that had the Department docketed it, his charge would have been deemed timely.  He claims that appellate review of the matter is authorized under section 8-111 of the Act (775 ILCS 5/8-111 (West 2004)) because Lieberman entered a final order on the first charge.  In contrast, the respondents argue that the issue was not before Lieberman and is therefore not properly before this court and that no final order ever issued on the first charge.  For the following reasons, we find that we have jurisdiction to review the petitioner's assignment of error regarding the first charge.  

The petitioner's request for a review of the Department's dismissal notice belies the respondents' argument.  The caption of the petitioner's request clearly reflects that he sought a review of the Department's dismissal notice involving charge Nos. 280A200931 and 2003SA3596.  Therein, he alleged that the Department's failure to assign a charge number to the first charge and its dismissal of his second charge for a lack of jurisdiction caused him to suffer a loss of remedies.  He requested a finding that he had timely filed the first charge with the Department, and he requested that the Department retroactively assign a Department charge number.  Clearly, the petitioner presented Lieberman with the same issue now raised on appeal.  

Moreover, we find that Lieberman made factual findings regarding the first charge sufficient to vest jurisdiction in this court.  Lieberman acknowledged the petitioner's argument that the Department should have filed EEOC charge No. 280A200931.  Thereafter, he made a finding of fact that the Department's investigation did not reveal, and that the petitioner did not provide, any evidence that the Department had received the first charge transmitted by the EEOC.  Lieberman continued, stating that the Department had previously considered a copy of the first charge and a copy of Dietz's letter dated December 12, 2002, and found no evidence that it had jurisdiction to investigate the petitioner's charge.  

We interpret Lieberman's order as a final disposition of the first charge and find that it is a final order within the meaning of the Act, which renders direct appellate jurisdiction proper.  

We turn now to consider the merits of the petitioner's argument regarding the first charge.  The petitioner contends that the EEOC timely transmitted his first charge to the Department, that the EEOC transmission satisfied the filing requirements of the Illinois Administrative Code, and that the Department acted arbitrarily and capriciously in ignoring his charge on the basis that it had not been filed directly with the Department.  To make his case, the petitioner relies primarily on language in the charge form, language in work-sharing agreements, and the EEOC's transmission of his charge to the Department.  He emphasizes that it is the Department's timely receipt of the first charge stating his intent to cross-file with the Department that constitutes compliance with the filing requirements of the Illinois Human Rights Act.  In contrast, the respondents argue that the EEOC sends charges to the Department for informational purposes only and that the filing of a charge with the EEOC does not mean that the charge is automatically filed with the Department.  They rely primarily on 
In re Polewaczyk
, Ill. Hum. Rts. Comm'n Rep. 1994CA2261 (April 25, 2001), as authority to support their argument.  For the reasons that follow, we agree with the petitioner and decline to follow the Commission panel's decision in 
In re Polewaczyk
.  

We note that no party has cited any statute or administrative regulation that expressly requires either (1) a complainant to personally file a charge with the Department to preserve his rights under the Act or (2) the Department to docket and process a charge filed with and transmitted by the EEOC.  Section 2520.10 of Title 56 of the Illinois Administrative Code defines "charge" as an allegation of a civil rights violation filed with the Department.  56 Ill. Adm. Code §2520.10 (as amended by 20 Ill. Reg. 10631 (eff. July 24, 1996)).  This section does not say that the charge must be filed with the Department by the petitioner personally or whether transmission of a charge by the EEOC is sufficient.  Section 2520.40 of Title 56 of the Illinois Administrative Code provides that a charge delivered to the Department by hand delivery or facsimile shall be deemed filed when received by the Department and that items delivered by the United States Postal Service shall be deemed filed when postmarked, properly addressed, and posted for delivery.  56 Ill. Adm. Code §2520.40 (as amended by 29 Ill. Reg. 804 (eff. December 28, 2004)).  The only legal authority cited by any party that substantively addresses the matter before us is a decision rendered by a three-member panel of the Illinois Human Rights Commission–
In re Polewaczyk
, Ill. Hum. Rts. Comm'n Rep. 1994CA2261 (April 25, 2001). 

The issue in 
In re Polewaczyk
 was whether the complainant had effectively filed a charge with the Department pursuant to section 7A-102(A)(1) of the Act (775 ILCS 5/7A-102(A)(1) (West 1992)), where he initially filed it with the EEOC and did not personally file it with the Department.  The Commission panel concluded that the complainant had not effectively filed his charge with the Department and that the Department had not technically received it, which deprived the Commission of subject matter jurisdiction of the complainant's case.  
In re Polewaczyk
, slip op. at ___.  In arriving at this conclusion, the Commission panel discussed at length the existence and effect of a work-sharing agreement between the Department and the EEOC, which was fundamental to the panel's decision in the case.  
In re Polewaczyk
, slip op. at ___.  In the instant case, the petitioner and the respondents rely on the existence of this work-sharing agreement in advancing their respective positions.  The petitioner relies on the agreement as evidence of the Department's duty to accept and docket a charge transmitted by the EEOC, and the respondents indirectly rely on the agreement to the extent that their counterarguments depend solely on 
In re Polewaczyk
.  However, as the respondents point out, the agreement was not before Lieberman and was not attached to the petitioner's petition for review.  Furthermore, we previously denied the petitioner's motion to supplement the record, so the agreement is not a part of the record on appeal in this case.  As a result, we do not consider the work-sharing agreement in passing on the parties' arguments, and we decline to apply 
In re Polewaczyk
 to the facts of the instant case.   

Rather, our disposition in favor of the petitioner is largely motivated by the language in the preprinted charge form utilized by the Department, indicating when checked that the complainant desires that the charge be filed with the EEOC and the state or local agency.  When a complainant checks this box, he also agrees to inform the state agency of a change in address and to cooperate with the agency in the processing of his charge.  This language, as checked by the petitioner, clearly reflects his intent that the charge be filed with the EEOC and the Department and carries with it the strong inference that his charge initially filed with the EEOC would be cross-filed with the Department without the need for any further action on his part.  The petitioner's reliance on this language was reasonable, especially in light of the absence of an administrative regulation or statute providing explicit filing instructions.

We further find that evidence and inferences from the record support our conclusion that the Department received the petitioner's first charge from the EEOC and that Lieberman's finding to the contrary was arbitrary and capricious and an abuse of discretion.  Lieberman stated in his order that the Department's investigation did not reveal, and that the petitioner did not provide, any evidence that the Department had received the first charge.  In making this finding, Lieberman refused to consider certain documents attached to the request for review, finding that the petitioner failed to show good cause for having not submitted the documents previously.  We disagree with Lieberman's finding regarding the Department's receipt of the first charge and his decision to reject the documents offered by the petitioner.

There is no dispute that the EEOC transmitted the charge to the Department on April 25, 2002, along with a transmittal form fully and properly addressed to the Department in Springfield, Illinois.  Moreover, despite the Department having had opportunities to do so, at no time leading up to Lieberman's order did anyone from the Department ever inform the petitioner that his first charge had not been received.  It is apparent that the petitioner did not submit a copy of his first charge, the EEOC transmittal form, and other documents to the Department prior to filing his request for review because no one from the Department had ever alleged that the Department had failed to receive his first charge.  Rather, the petitioner was informed that his first charge had not been processed because he did not file it directly with the Department.  Under these facts, we find that the petitioner demonstrated good cause for not previously submitting these documents.  Had Lieberman considered the documents offered by the petitioner, he would have arrived at the same conclusion as we do: the petitioner timely filed a charge of discrimination with the Department.     

Nothing in the Illinois Administrative Code or the Illinois Human Rights Act required the petitioner to file the charge with the Department himself rather than rely on the EEOC's transmission.  Furthermore, the charge form adequately informed the Department that the petitioner sought redress for discrimination based on his age, sex, and disability and that he expected the Department to take action on his claims.  Nothing in the record supports the respondents' claim that the EEOC transmitted the petitioner's first charge to the Department for informational purposes only.  Accordingly, we find that the EEOC's timely transmission of a copy of the petitioner's first charge to the Department satisfied his responsibility under the Act sufficient to trigger the Department's processing and investigation of the charge and that he should not be penalized for the Department's failure to docket his first charge.  To do otherwise would undermine the petitioner's right to redress and shield potentially illegal discrimination from the reach of state law.  

III.  CONCLUSION

Accordingly, we affirm Lieberman's order sustaining the Department's dismissal of the second charge (charge No. 2003SA3596) for a lack of jurisdiction, and we reverse the order to the extent that it disposes of the first charge (charge No. 280A200931).  We remand the matter for further proceedings consistent with this order, including, but not limited to, the assignment of a Department docket charge number to EEOC charge No. 280A200931 and the Department's compliance with all applicable statutory and regulatory requirements as they relate to a timely filed charge under section 7A-102(A)(1) of the Act (775 ILCS 5/7A-102(A)(1) (West 2004)).

Affirmed in part and reversed in part; cause remanded.

HOPKINS and SPOMER, JJ., concur.

                                      NO. 5-04-0542

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

WALKER ALLEN, )  Petition for Review of the Order of the

)  Chief Legal Counsel Designee of the

     Petitioner, )  Illinois Department of Human Rights. 

)

v. )

)

MICHAEL I. LIEBERMAN, THE )  No. 2003SA3596

DEPARTMENT OF HUMAN RIGHTS, and )

SOUTHERN ILLINOIS UNIVERSITY, )

)  

     Respondents. )

___________________________________________________________________________________

Opinion Filed
: August 30, 2005

___________________________________________________________________________________

Justices
: Honorable Melissa A. Chapman, J.

Honorable Terrence J. Hopkins, J., and

Honorable Stephen L. Spomer, J.,

Concur

___________________________________________________________________________________

Attorney
 Jerome J. Dobson, Weinhaus, Dobson, Goldberg and Moreland, 906 Olive

for
 Street, Suite 900, St. Louis, MO 63101

Petitioner
 

___________________________________________________________________________________

Attorneys
 Lisa Madigan, Attorney General, State of Illinois, Gary Feinerman, Solicitor General,

for
 Ellen B. Stanfield, Assistant Attorney General, 100 West Randolph Street, 12th Floor,

Respondents
 Chicago, IL 60601; Mark Brittingham, Board of Trustees of Southern Illinois 

University, 318 Anthony Hall–MC 4307, Carbondale, IL 62901

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/30/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.