NOTICE

Decision filed 02/03/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190013-U

NO. 5-19-0013

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| BRIAN HOLSAPPLE, | ) | Appeal from The |
| | ) | Illinois Human Rights |
| Petitioner, | ) | Commission. |
| | ) | |
| v. | ) | Charge No. 21BA30027 |
| | ) | ALS No. 13-0529 |
| THE ILLINOIS HUMAN RIGHTS | ) | |
| COMMISSION, THE DEPARTMENT | ) | |
| OF HUMAN RIGHTS, and | ) | |
| THE ILLINOIS STATE POLICE, | ) | |
| | ) | |
| Respondents. | ) | |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Overstreet and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The respondents' motion to dismiss the appeal for lack of jurisdiction is granted where the petitioner failed to exhaust his administrative remedies when he did not file written exceptions to the administrative law judge's recommended order and decision and no exception to the doctrine of exhaustion of administrative remedies excused his noncompliance. Thus, this appeal is dismissed for lack of jurisdiction.

¶ 2    The petitioner, Brian Holsapple, filed a charge of discrimination with the Illinois Department of Human Rights (Department), under the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2012)), alleging that his employer, the Illinois State Police

1

(ISP), retaliated against him by involuntarily transferring him to a patrol position for engaging in a protected activity. In accordance with section 7A-102(D)(4) of the Act (775 ILCS 5/7A-102(D)(4) (West 2012)), the Department filed a complaint with the Illinois Human Rights Commission (Commission), after finding that there was substantial evidence in support of Holsapple's retaliation claims. Thereafter, the administrative law judge (ALJ) issued a recommended order and decision, concluding that the Commission lacked jurisdiction over the charge because Holsapple failed to file his perfected charge within the 180-day time limit prescribed by section 7A-102(A)(1) of the Act (*id.* § 7A-102(A)(1)).[1] Because Holsapple did not file any written exceptions to the ALJ's recommended order and decision, the ALJ's decision became the decision of the Commission. Holsapple then sought direct administrative review of the Commission's decision in this court.[2] For the reasons that follow, we dismiss the appeal for lack of jurisdiction.

¶ 3                                I. BACKGROUND

¶ 4      In July 2011, Holsapple, who was 35 years old, was transferred from the ISP special weapons and tactics (SWAT) team to a position in the air operations unit in the special operations command. Prior to his transfer, he had complained to John Merrifield, an ISP sergeant/equal employment opportunity investigator, that SWAT team members were

---

[1]Section 7A-102 of the Act has since been amended to extend the time for filing a charge with the Department to 300 days after the alleged violation. Because Holsapple filed his charge in 2012, we use the version of the statute in effect at that time, which set the time limit at 180 days.

[2]While the ISP was the only respondent named in the administrative action below, the respondents named in this appeal are the ISP, the Department, and the Commission.

being subjected to discriminatory conduct because of their ages and that he was subjected to a hostile work environment because he had refused to participate in the discriminatory conduct. In August 2011, he filed a complaint for age discrimination with the Equal Employment Opportunity Commission (EEOC). On March 2, 2012, he received a right to sue letter from the EEOC.

¶ 5 On March 15, 2012, Lieutenant Colonel Bruce Banks called Holsapple to inform him that his temporary duty assignment in the special operations command was ending at the end of that month. Lieutenant Colonel Banks told Holsapple that he had until the close of business that day to decide if he wanted to be transferred back to the SWAT team or make a voluntary transfer to patrol. Holsapple responded that he did not want to be transferred to patrol but that it was not an option for him to return to the SWAT team until the age discrimination "situation" was resolved there. The next day, Lieutenant Colonel Banks sent an email to Holsapple containing a pre-typed officer action request (OAR) form, which indicated that effective April 1, 2012, Holsapple was being transferred from his current position to a patrol position. The form also indicated that he would be receiving a level 2 salary in the patrol position, which was a pay reduction from his level 3 salary at his then-current assignment.

¶ 6 On March 19, 2012, Holsapple sent an email to Lieutenant Colonel Banks, objecting to the use of an OAR form to effectuate the transfer because he had not requested the transfer to patrol. He indicated that he was only given two options, either return to SWAT or transfer to patrol, and that returning to SWAT was not a viable option. He further indicated that he would sign the OAR form, but he first wanted a direct, written order to

3

sign the form because he was not voluntarily transferring to patrol. He did not receive a response to this email.

¶ 7 On March 22, 2012, Holsapple emailed Lieutenant Colonel Banks asking for confirmation that his start date was April 1, 2012, for his new assignment. Holsapple did not receive a response to this email. On March 29, 2012, the OAR form to transfer Holsapple to patrol was completed and was signed by Holsapple's supervisors. The form was not signed by Holsapple. He began his patrol assignment on April 1.

¶ 8 On May 18, 2012, Holsapple, along with another ISP officer who worked for the SWAT team, filed an action in the circuit court of Williamson County (case No. 12-L-97). This case was ultimately removed to federal court and was consolidated with another case involving the alleged discrimination in the SWAT team. On September 28, 2012, Holsapple filed a perfected charge of discrimination with the Department, alleging two counts of age discrimination and two counts of retaliation.

¶ 9 On October 18, 2013, the Department made a finding that substantial evidence existed on the retaliation counts but found that there was not substantial evidence on the age discrimination counts. In December 2013, the Department filed a complaint of civil rights violations with the Commission on the retaliation counts in accordance with section 7A-102(D)(4) of the Act (*id.* § 7A-102(D)(4)). The complaint alleged that Holsapple was involuntarily transferred/demoted to patrol for engaging in a protected activity. On April 30, 2014, the ISP filed an amended answer to the complaint, asserting the following affirmative defense: that Holsapple had failed to timely file his charge of discrimination. In particular, the affirmative defense asserted that, pursuant to section 7A-102(A)(1) of the

4

Act (*id.* § 7A-102(A)(1)), Holsapple had 180 days after the date on which the civil rights violation was allegedly committed to file his charge of discrimination; that he was notified on March 15, 2012, that he was being permanently transferred to patrol; and that he filed his perfected charge of discrimination on September 28, 2012, more than 180 days after the alleged civil rights violations. Thereafter, the ALJ continued Holsapple's administrative action pending resolution of the federal litigation.

¶ 10    In November 2016, the United States District Court for the Southern District of Illinois granted summary judgment in favor of the ISP on Holsapple's retaliation claims. However, the federal court did not enter final judgment until September 19, 2017, when the entirety of the claims in the consolidated action were adjudicated. Holsapple did not appeal from the summary judgment or the final judgment.

¶ 11    On February 13, 2018, the ISP filed a motion for summary decision in the administrative action, arguing, *inter alia*, that Holsapple's perfected charge of discrimination was untimely as it was filed more than 180 days after the alleged discriminatory conduct. The motion indicated as follows: that, if the complainant failed to comport with the 180-day filing deadline, the Commission lacked subject matter jurisdiction to consider the complaint; that the 180-day deadline began to run on the date of the alleged discriminatory conduct, which was when the alleged discriminatory decision (the transfer) was made and communicated to Holsapple, not when the consequences of the decision were felt; that the decision to transfer Holsapple to patrol was made and communicated to Holsapple on March 16, 2012, when he received the OAR form transferring him to patrol via email; that he was aware of the impending transfer on this

5

date; that he filed his charge for discrimination on September 28, 2012, 196 days after he was notified of the transfer; and, even if the 180-day deadline did not begin to run until completion of the transfer paperwork on March 29, 2012, his charge was still untimely by three days. Accordingly, the motion contended that the Commission lacked subject matter jurisdiction and requested that summary decision be entered in favor of the ISP.

¶ 12 On March 27, 2018, Holsapple filed a response to the motion for summary decision in which he contended, in pertinent part, that his complaint was timely filed because the limitation period did not begin to run until April 1, 2012, when his transfer to patrol was made permanent. He argued that he did not have notice of the transfer when he was asked to sign the OAR form because the completion of that form meant that he was voluntarily transferring to patrol, not being ordered to do so; that there were no consequences from his refusal to sign the form; that he had requested a direct order from Lieutenant Colonel Banks to sign the form, which never occurred; and that, until he was given a direct order, he did not know whether the ISP would have been satisfied with maintaining the status quo by letting him remain in the special operations command.

¶ 13 On October 19, 2018, the ALJ issued a recommended decision, finding that the Commission lacked jurisdiction to consider Holsapple's complaint because he filed his charge of discrimination more than 180 days after he had been notified of the adverse acts, *i.e.*, his transfer and/or demotion. In so deciding, the ALJ noted that, with respect to discreet acts of alleged discrimination such as the instant transfer or demotion, the 180-day limitation period began to run on the day that the decision was made and communicated to Holsapple, and not when the consequences of the decision were felt. The ALJ noted that

6

there were six possible dates as to when the relevant 180-day period began: (1) March 15, 2012, when Holsapple's supervisor informed him on the telephone that he had until the close of the business day to choose to return to SWAT or be transferred to patrol; (2) March 16, 2012, when he was emailed the OAR form to effectuate his transfer to patrol, with directions to sign the form; (3) March 19, 2012, when he sent an email to his supervisor informing the supervisor that a return to the SWAT team was not an option but that he would do as he was told and report to the patrol assignment; (4) March 22, 2012, when he sent an email to his supervisor requesting confirmation of a starting date when he was supposed to start his new assignment at patrol; (5) March 29, 2012, when the paperwork for effectuating the assignment was completed, albeit without his signature; or (6) April 1, 2012, when he actually reported to his patrol assignment.

¶ 14   The ALJ ruled out April 1 as the operative date when the 180-day period began because Holsapple was aware of management's decision to transfer him to either a SWAT team position or a patrol position as early as March 15, and he had acknowledged the decision to transfer him to patrol in his March 19 email, wherein he told his supervisor that the SWAT team position was not a viable option for him and that he would report to the patrol position as instructed.  The ALJ noted that Holsapple failed to explain how his request for his supervisor to direct him to sign the OAR form put into doubt whether the decision had been made to transfer him to either one of two different positions.  The ALJ found that Holsapple's March 19 email that he would do as he was told and sign the OAR if directed to do so reinforced a finding that he was fully aware of a final decision to transfer

him to the patrol position by that time for purposes of starting the 180-day limitations period.

¶ 15   The ALJ further found that Holsapple's argument that April 1 was the operative date assumed that the decision to transfer him to the patrol position was not final until his supervisor satisfied his request to direct him to sign the OAR form. The ALJ noted that this argument ignored the language in Holsapple's own March 19 email that acknowledged that he had only two options, neither of which pertained to keeping the status quo with respect to his temporary duty assignment. Thus, the ALJ found that staying in the temporary duty assignment was never an option after the March 15 telephone call that Holsapple received from his supervisor and that he was well aware by the March 19 email that he was going to assume a patrol position. Because March 19, 2012, was 193 days prior to Holsapple filing his September 29, 2012, perfected charge, the ALJ concluded that the Commission lacked jurisdiction over his charge of discrimination.

¶ 16   On December 7, 2018, the Commission issued a notice stating that it had not received any timely exceptions to the recommended order and decision issued by the ALJ. Thus, the recommended order and decision became the order and decision of the Commission in accordance with section 8A-103(A) of the Act (*id.* § 8A-103(A)). On January 7, 2019, Holsapple filed a petition for direct administrative review in this court. Thereafter, the respondents filed a motion to dismiss the petition for lack of jurisdiction, arguing that Holsapple failed to exhaust his administrative remedies because he never filed written exceptions to the ALJ's report and recommended order. This court issued an order directing that the motion be taken with the case.

8

¶ 17                                    II. ANALYSIS

¶ 18    After carefully reviewing the record, we find that the doctrine of exhaustion of remedies precludes Holsapple from seeking direct administrative review in this court for the reasons set forth below. Because we find that we lack jurisdiction to consider this appeal, we need only address the procedural aspects of this case.

¶ 19    Section 7A-102 of the Act (*id.* § 7A-102) sets forth the procedure in which an aggrieved employee can file a charge against their employer with the Department. At the time that Holsapple filed his charge of discrimination, an aggrieved employee had 180 days from the date that the alleged civil rights violation had been committed to file a charge with the Department. *Id*. § 7A-102(A)(1). After the employee files the charge, the Department conducts an investigation into the allegations and determines whether there is substantial evidence that the alleged civil rights violation has been committed. *Id.* § 7A-102(C), (D). If the Department determines that there is substantial evidence of a violation, the Department notifies the complainant that he can request that the Department file a formal complaint with the Commission on his behalf. *Id.* § 7A-102(D)(4). After the formal complaint is filed with the Commission, a hearing is set before a hearing officer of the Commission. *Id.* § 8A-102(A).

¶ 20    If a party files a dispositive motion before the Commission, the ALJ can issue a recommended decision on that motion. *Id.* § 8A-102; 56 Ill. Adm. Code 5300.530 (1996). A party then has 30 days from the receipt of service of the recommended order to file written exceptions with the Commission. 775 ILCS 5/8A-103(A) (West 2012). If a party fails to file the written exceptions within the 30-day deadline, the recommended order

9

becomes the order of the Commission without further review. *Id*. In that case, the Commission is instructed to issue a notice that no exceptions have been filed within the 30 days. *Id.* A party who fails to file written exceptions shall be deemed to have failed to exhaust his administrative remedies. 56 Ill. Adm. Code 5300.910 (1996).

¶ 21 Here, Holsapple elected to not file written exceptions to the ALJ's recommended order and decision on the ISP's motion for summary decision and appealed directly to this court under Illinois Supreme Court Rule 335(a) (eff. July 1, 2017). Thus, under the rule in section 5300.910, Holsapple has failed to exhaust his administrative remedies. 56 Ill. Adm. Code 5300.910 (1996).

¶ 22 Generally, a party may not seek review in the courts from an administrative action unless the party has exhausted all available administrative remedies. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989). This requirement "allows the administrative agency to fully develop and consider the facts of the cause before it; it allows the agency to utilize its expertise; and it allows the aggrieved party to ultimately succeed before the agency, making judicial review unnecessary." *Id.* It also "helps protect agency processes from impairment by avoidable interruptions, allows the agency to correct its own errors, and conserves valuable judicial time by avoiding piecemeal appeals." *Id.*

¶ 23 Strict compliance with the doctrine is required except where (1) a statute, ordinance, or rule is attacked as unconstitutional on its face; (2) multiple administrative remedies exist and at least one is exhausted; (3) the agency cannot provide an adequate remedy or where it is patently futile to seek relief before the agency; (4) no issues of fact are presented or agency expertise is not involved; (5) irreparable harm will result from further pursuit of

administrative remedies; or (6) the agency's jurisdiction is attacked because it is not authorized by statute. *Id.* at 308-09.

¶ 24 Here, the only exception raised by Holsapple is number four, *i.e.*, no issues of fact are presented. He contends that this case involves a purely legal question, *i.e.*, whether section 7A-102(A)(1) of the Act was properly applied; and that because this claim presents a purely legal question, agency expertise is not needed to resolve the claim. We disagree and find that this is not a purely legal question.

¶ 25 In accordance with section 7A-102(A)(1) of the Act (775 ILCS 5/7A-102(A)(1) (West 2012)), Holsapple had 180 days from the date that the alleged civil rights violation had been committed to file his charge with the Department. Compliance with this 180-day requirement is a condition precedent to the complainant's right to seek a remedy and is required to vest the Commission with subject matter jurisdiction over the charge. *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1177 (2005). The Commission has no authority to consider complaints based on untimely filed charges. *Weatherly v. Illinois Human Rights Comm'n*, 338 Ill. App. 3d 433, 437 (2003). "For the purpose of calculating the timeliness of this type of claim, courts focus on the time the discriminatory decision is made and communicated to the complainant, not on the time the consequences of the decision are felt." *Allen*, 359 Ill. App. 3d at 1178.

¶ 26 In this case, the parties dispute when the alleged discriminatory decision was made and communicated to Holsapple. Holsapple contends that the decision was communicated to him on April 1, the date that he first reported to his new patrol assignment. In contrast, the respondents contend that the decision was made and communicated to Holsapple on

11

March 15. They further argue that Holsapple made the decision to accept the transfer on March 15, that he received the transfer paperwork on March 16, and that he wrote an email confirming his new position on March 19. Accordingly, the relevant inquiries are when the decision to transfer Holsapple to patrol was made by the ISP and when was it communicated to Holsapple. These determinations are not purely legal questions. Because factual issues must be resolved here, the fourth exception to the doctrine of exhaustion of remedies does not apply. As Holsapple has not argued that any of the other exceptions apply, we find that he failed to pursue his available administrative remedies by not filing written exceptions to the ALJ's recommended order and that none of the exceptions to the doctrine of exhaustion of remedies applies to excuse his noncompliance. Moreover, we find his argument that he would be denied due process if we dismissed his appeal without merit. Section 8A-103 of the Act allows for a complainant to challenge an ALJ's recommended order and decision. Holsapple cannot now claim a due process violation because he did not take advantage of those review procedures. Accordingly, we grant the respondents' motion to dismiss Holsapple's action for direct administrative review that was taken with the case.

¶ 27                         III. CONCLUSION

¶ 28    For the above reasons, we dismiss this appeal for lack of jurisdiction.


¶ 29    Appeal dismissed.

12